Matthew G. Monforton, Montana Bar # 5245
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Telephone: (406) 570-2949
Email: matthewmonforton@yahoo.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| JOHN J. LOONEY, Sr.; DO PROCESS, INC., a Montana corporation d/b/a BAD BOY BAIL BONDS, <br><br> Plaintiffs, <br><br> v. <br><br> KAROLINA TIERNEY; J. COLLEEN HERRINGTON, <br><br> Defendants. | Cause No. CV-24-109-BU-KLD <br><br> **VERIFIED COMPLAINT** |

COMES NOW Plaintiffs John J. Looney, Sr., and Do Process, Inc., d/b/a

Bad Boy Bail Bonds, who bring this action against the above-named Defendants

and allege as follows:

## I. INTRODUCTION

1.     This case arises from an egregious abuse of power by the two judges

sitting on the Bozeman Municipal Court.  Their retaliatory actions threaten not

only the livelihood of a licensed bail bondsman but also the integrity of the judicial system.

2.      In most retaliation cases, plaintiffs rely on circumstantial evidence to prove intent, as "proof of an official's retaliatory intent rarely will be supported by direct evidence." *Bloch v. Ribar*, 156 F.3d 673, 682 (6th Cir. 1998).

3.      This case is different.  The judges explicitly stated in writing that they are refusing to accept Plaintiff John Looney's bail bonds until he withdraws his pending judicial ethics complaint.  They made these statements on September 3, 2024, and again September 13, 2024.

4.      Trouble began in March 2024 when Bozeman Municipal Judge Karolina Tierney ordered Looney and his company, Bad Boy Bail Bonds, to pay $1,585 for a bond forfeiture issued against a different bondsman four years earlier.

5.      Looney refused to pay and appealed. Judge Tierney removed the notice from the court file.  The Municipal Court then instructed the Gallatin County Detention Center to stop accepting Looney's bonds due to the alleged $1585.00 debt.

6.      Exercising his constitutional rights, Looney filed a complaint with the Montana Judicial Standards Commission (JSC) on July 10, 2024, against Judge Tierney.

7.     The JSC summarily dismisses the vast majority of complaints it receives. In a letter dated August 27, 2024, however, the JSC ordered Judge Tierney to respond to Looney's complaint.

8.     Looney also made a public records request to the City of Bozeman on August 20, 2024, regarding the Municipal Court's actions.  The request is still pending.

9.     Facing severe business losses, Looney reluctantly paid the bond forfeiture on August 30 even though he was not legally responsible.

10.     Instead of lifting the bond ban, however, Judges Tierney and J. Colleen Herrington escalated the matter, demanding that Looney withdraw his JSC complaint before they would allow his bonds to be accepted.

11.     On September 3, 2024, the booking sergeant for the Gallatin County Detention Center asked the Municipal Court clerk if Looney's bonds could be accepted now that the bond forfeiture was paid.  The clerk responded, "They did pay the bond – _however, that is not the reason that their bonds are not being accepted_.  Until the judges say otherwise, their bonds are still not to be accepted."

12.     The clerk then informed Looney that the judges required a meeting with him before accepting his bonds. She told Looney she would call him later to set up the meeting.

13.     The clerk never called back.

14.     At 5:47 p.m. on the following day, September 4, the clerk sent an

email to Looney informing him that "*the judges are confused as to whether this*

*payment means that the ethics complaint filed against Judge Tierney is resolved*

*and will be withdrawn*. With the pending complaint and potential litigation you

have referenced, the judges would not be able to meet with you to discuss anything

that may be handled pursuant to the complaint or pending litigation.  If you can let

me know this information to clear up any confusion, I will bring it back to the

judges to determine if I can schedule a meeting with you."

15.     Looney was shocked by the judges' demand: withdraw his JSC

complaint, or the judges would not accept his bail bonds.

16.     Over the next nine days, Looney sent daily emails to the court,

stressing that he had paid the bond forfeiture and pointing out the harm the judges'

actions were doing to his business.

17.     On Friday, September 13, Judge Herrington sent Looney this email:

Mr. Looney,

*At this time, there is a pending ethics complaint with the Commission*
*on Judicial Standards and you have stated in an email to Ms.*
*Westberg that you have also filed new complaints.* Additionally, you
have indicated in several different communications that there is
pending litigation against the City of Bozeman and/or the Bozeman
Municipal Court. *Until there are decisions by the Commission on*
*Judicial Standards and/or until any litigation is complete, we are*
*unable to discuss any topics concerning Bad Boy Bail Bond and/or*
*Montana Pretrial Services, LLC with you directly.* Ms. Westberg has
already communicated this to you.

J. Colleen Herrington, Municipal Court Judge

(emphasis added).

18.     The judges' retaliation is devastating Looney's business, and their demand to withdraw his JSC complaint as a condition for accepting his bonds is not just retaliation.  The judges' use of their official position to demand the withdrawal of a valid ethics complaint in exchange for reinstating business privileges amounts to extortion.

19.     Looney refuses to withdraw his JSC complaint and has filed another JSC complaint against both judges

20.     On September 16, 2024, Looney filed a state court action for declaratory and injunctive relief (*Looney et al. Tierney, et al*., Mont. 18th Jud. Dist. Case No. DV-16-2024-0001014).

21.     On September 18, 2024, Looney filed a motion for temporary restraining order (TRO) in the state court action and served copies of the complaint, summons, and TRO motion on the judges.

22.     On September 28, 2024, Looney learned that Yellowstone County Sheriff Mike Linder was instructed not to accept Looney's bail bonds for defendants arrested in the Billings area on Gallatin County warrants.

23.     As of October 1, 2024, the state court has not taken any action on Looney's TRO motion or responded to it in any manner.

## JURISDICTION AND VENUE

24.     This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331,

1343, 42 U.S.C. § 1983, and the First and Fourteenth Amendments to the United

States Constitution.

25.     Venue is proper in the Butte Division of this Court.  L.R. 3.2(b).

## PARTIES

26.     Plaintiff John J. Looney is, and at all times pertinent to this action has

been, a resident of Lewis and Clark County, Montana.

27.     Plaintiff Do Process, Inc. is a Montana corporation with its primary

place of business in Lewis and Clark County, Montana.

28.     Defendant Karolina Tierney is, and at all times pertinent to this action

has been, a judge sitting on the Bozeman Municipal Court in Bozeman, Montana.

Upon information and belief, Plaintiffs allege that Judge Tierney resides in

Gallatin County, Montana.  Defendant Tierney is sued in both her personal and

official capacities.

29.     Defendant J. Colleen Herrington is, and at all times pertinent to this

action has been, a judge sitting on the Bozeman Municipal Court in Bozeman,

Montana. Upon information and belief, Plaintiffs allege that Judge Herrington

resides in Gallatin County, Montana.  Defendant Herrington is sued in both her

personal and official capacities.

## STATEMENT OF FACTS

**A.** **Looney's Background as a Bail Bondsman**

30.     Plaintiff John J. Looney is, and all times pertinent to this action has

been, licensed by Montana's Commissioner of Securities and Insurance (CSI) to

engage in the business of insurance and, specifically, writing surety bail bonds.  A

true and correct copy of Looney's license is attached as **Exhibit 1**.

31.     Looney is the sole owner of Plaintiff Do Process, Inc.[1]

32.     Activities performed by Do Process, Inc., include writing surety bail

bonds, which it does under the name "Bad Boy Bail Bonds," an assumed business

name registered with the Montana Secretary of State.

33.     Do Process, Inc., is, and all times pertinent to this action has been,

licensed by CSI, which has granted it a surety line of authority.  A true and correct

copy of Do Process's license is attached as **Exhibit 2**.

34.     Pursuant to Mont. Code Ann. § 46-9-401(d), Looney and Bad Boy

Bail Bonds have acted as qualified agents of Allegheny Casualty Co., and AIA

Surety, both of which are sureties licensed by CSI to do business in Montana.

---

[1] Plaintiffs shall be referred to collectively as "Looney" unless the context dictates otherwise.

35.     Looney's career in law enforcement and the bail business began in 1992 when he enlisted in the U.S. Army.  He served with the 3rd Ranger Battalion and later became a military police officer.  He was honorably discharged in 2002.

36.     Looney was a Detention Officer for the Lewis and Clark County Sheriff's Office from 2012 to 2018 and served as President of the Lewis and Clark County Sheriff's Employees Association.

37.     After leaving the Sheriff's Office, Looney worked as a clerk in the Lewis and Clark Justice Court in 2018.

38.     Later in 2018, Looney transferred to the private sector and began work as a bail bondsman.

39.     That same year, Looney was appointed as the Montana Chair for the Board of the National Association of Bail Agents (NABA), where he began advocating for bail agents at both the state and national levels.

40.     In 2019, Looney became the National Education/Training Director for NABA, where he led efforts to raise the standards of bail agents across the country, designing training programs and ensuring bail professionals operated with the highest ethics and competency.

41.     In 2021, Looney conducted training programs for law enforcement, court clerks, and detention centers across Montana, including a highly regarded training session conducted on behalf of CSI in Helena.

42.     Looney has also conducted numerous seminars and presentations for court personnel on behalf of the Montana Association of Clerks of District Court and the limited court clerk's association of the Commission on Courts of Limited Jurisdiction.

43.     The Montana Jail Commanders have asked him to present at their annual meeting in October 2024.

44.     Looney is currently the President of the Montana Bail Agents Association and has held that position since 2022.  He is also the Executive Vice President of NABA and has held that position since 2021.

45.     In 2022, Looney purchased from John Jay Willoughby the right to use the name "Bad Boy Bail Bonds & Shot Gun Willy's Fugitive Recovery Service," an assumed business name that Willoughby had previously registered with the Montana Secretary of State.  Verda Singleton was a contractor/employee under Willoughby prior to Looney's purchase of the right to use the name.

46.     In December 2022, Looney shortened the assumed business name to "Bad Boy Bail Bonds" and re-registered it with the Montana Secretary of State.

**B. Looney's JSC Complaint Against the Municipal Court Judges**

47.     On February 14, 2020, Verda Singleton executed a bail bond for $1,585 on behalf of Richard Harmon, a criminal defendant charged with several misdemeanors in the Bozeman Municipal Court.

48.     The criminal defendant subsequently failed to appear at a hearing, prompting the clerk to issue a Notice of Bond Forfeiture on February 21, 2020.

49.     *Four years later*, the Bozeman Municipal Court began seeking payment from Looney concerning the 2020 bond forfeiture.

50.     Looney explained to the court that its actions were improper because, *inter alia*, the court incorrectly applied the bond to multiple cases and the bond had been executed by Verda Singleton, who was a contractor/employee of John Jay Willoughby, the previous owner of the company, not Looney.

51.     Judge Tierney rejected these arguments and, on March 11, 2024, ordered Bad Boy Bail Bonds to pay $1,585 by March 18, 2024.

52.     Looney filed a notice of appeal on March 14, 2024.

53.     Judge Tierney issued an "Order Nunc Pro Tunc" on the following day purporting to remove Looney's notice of appeal from the court's records.

54.     On March 28, 2024, a complaint was filed against Looney with CSI by the "Bozeman Municipal Court," which was listed as "Investor."  A true and correct copy of the complaint is attached as **Exhibit 3.**

55.     CSI investigated the complaint and rejected it.

56.     Sometime in June 2024, Michelle Westberg, the Chief Clerk of the Bozeman Municipal Court, sent an email to Sergeant Michael Flohr, the booking sergeant for the Gallatin County Detention Center in Bozeman.

57.    A true and correct copy of that email is attached as **Exhibit 4**.

58.    In that email, Westberg stated the following:

Greetings,

Due to an ongoing, unsettled case in which Bad Boy Bail Bonds owes the Court $1585.00 for a Bond Forfeiture, Bozeman Municipal Court will no longer accept bail bonds from them. Flohr – Please forward this information to your staff. If you have questions, please call or reply.

**Exhibit 4**.

59.    Looney did not receive any notice from the Municipal Court that it had barred the Detention Center from accepting his bonds.  He first learned of the court's action when Jennifer Lokken-Ore, one of Looney's Bozeman-based bondsmen, attempted to post a bond at the Detention Center on June 30, 2024.  It was at that time that the detention center staff informed her that Looney's business had been banned by the Bozeman Municipal Court from posting bonds. This came as a complete surprise, as he had received no prior notice of any such decision.

60.    On the following day, July 1, 2024, Sergeant Flohr confirmed that he had received an email from the Bozeman Municipal Court with instructions to no longer accept bonds from Bad Boy Bail Bonds.  Sergeant Flohr forwarded the court's email to Looney on July 1, 2024.  **Exhibit 4**.

61.    On July 9, 2024, Looney filed a JSC complaint against Judge Tierney.

62.     Looney filed a public records request with the City of Bozeman on August 20, 2024, relating to the court's actions, which is still pending.

63.     The JSC sent a letter to Looney dated August 27, 2024, informing him it had convened, reviewed his complaint, and ordered Judge Tierney to respond.[2]

**C.     The Municipal Judges' Demand That Looney Withdraw His JSC Complaint as a Condition for Accepting His Bail Bonds**

64.     On Friday, August 30, 2024, Looney instructed Lokken-Ore to bring a check for $1,585 to the Bozeman Municipal Court to pay the bond forfeiture.

65.     When Lokken-Ore brought the check to the court, the clerks expressed confusion at Looney paying the forfeiture for a bond he did not write. They accepted the check, however, and stated that they would notify the Gallatin County Detention Center that Bad Boy Bail Bonds was "back in compliance."

66.     Looney texted Sergeant Flohr at 5:04 p.m. on Friday, August 30, to confirm that the Gallatin County Detention Center would resume accepting his bonds in Municipal Court cases.  A true and correct copy of the text messages exchanged between Looney and Sergeant Flohr is attached as **Exhibit 5**.

---

[2] Under Rule 7 of the JSC's rules, all papers filed with the JSC are confidential until the JSC completes its investigation or files them with the Montana Supreme Court.  Pursuant to L.R. 5.2(b), Looney will seek leave from this Court to file under seal copies of his JSC documents.

67.     Sergeant Flohr responded by text message on Monday, September 2, and stated the following: "I have not heard anything back yet but I will call them tomorrow as today is a holiday."  **Exhibit 5**.

68.     At 8:22 a.m. on Tuesday, September 3, Sergeant Flohr sent an email to Westberg stating the following:

> John [Looney] from Bad Boy/Montana Pre-Trial Services told [me] that they paid that outstanding forfeiture and a clerk there said that you will accept their bonds again. Just wanted to make sure for sure and then I will inform my staff.

A true and correct copy of this email is attached as **Exhibit 6**.

69.     Moments later, Westberg emailed the following response to Flohr:

> Greetings, Flohr –
> THANK YOU for checking on this.
> They did pay the bond - *however, that is not the reason their bonds are not being accepted.*
> Until the Judges say otherwise, their bonds are still not being accepted.

**Exhibit 6** (emphasis added).

70.     At 8:31 a.m. that same morning, Sergeant Flohr sent a text message to Looney informing him of the judges' continued refusal to allow the Detention Center to accept Looney's bail bonds.  **Exhibit 5**.  Sergeant Flohr then forwarded to Looney the email he had received from the Bozeman Municipal Court.

71.     At 8:34 a.m., Looney called Westberg to ask when the court would allow Bad Boy Bail Bonds to issue bail bonds in its cases.

72.     Westberg told Looney that Judge Tierney and Judge Herrington wanted to meet with him before they made a decision about accepting his bail bonds.  She also said that she would call Looney later and inform him of the time of the meeting.  Looney told Westberg that he could meet with the judges "24/7."

73.     At 8:54 a.m. on Tuesday, Looney called Sergeant Flohr, who told Looney that the Bozeman Municipal Court's action was "all a bunch of BS. The jail is getting too full to keep this up.  Valley [Bail Bonds] and your team are normally the only ones bonding people out."

74.     At 9:02 a.m., Sergeant Flohr sent another email to Westberg asking why the court would not allow him to accept Bad Boy's bail bonds.  A true and correct copy of this email is attached as **Exhibit 7**.

75.     Westberg responded a few moments later with the following email:

> John called the office and I spoke to him.  The judges would like to have a meeting with him and I shared that information with John.

**Exhibit 7**.

76.     Looney called Sergeant Flohr at noon and again at 3:00 p.m. on Tuesday afternoon to ascertain whether the Bozeman Municipal Court had resumed accepting his bonds.  Sergeant Floor told him that he had not received any such message from the court.

77.     Westberg never called Looney back regarding a meeting with the Municipal Court judges.

78. At 5:47 p.m. on the following day (Wednesday September 4, 2024), Westberg sent an email to Looney that included the following statements:

> *Regarding the meeting request, the judges are confused as to whether this payment means that the ethics complaint filed against Judge Tierney is resolved and will be withdrawn.* With the pending complaint and potential litigation you have referenced, the judges would not be able to meet with you to discuss anything that may be handled pursuant to the complaint or pending litigation.
>
> If you can let me know this information to clear up any confusion, I will bring it back to the judges to determine if I can schedule a meeting with you.

A true and correct copy of this email is attached as **Exhibit 8** (emphasis added).

79. Looney was shocked by this email and viewed it as a demand by the judges to withdraw his JSC complaint against Judge Tierney as a condition for his bail bonds being accepted again by the Bozeman Municipal Court.

80. Looney sent an email to Westberg on Thursday, September 5. A true and correct copy of this email is attached as **Exhibit 9**. The email included the following statement:

> I find it concerning that the court's decision to reinstate my bonding privileges is now being tied to the status of the ethics complaint I filed against Judge Tierney. The implication that my business will continue to face penalties unless I withdraw the ethics complaint is troubling. I must emphasize that my decision to file a complaint with the Judicial Standards Commission was made to address what I believe to be serious ethical concerns, and the resolution of this complaint is entirely within the hands of the Commission.

Looney also stated the following in the email:

> Any further suggestion that the resolution of the ethics complaint
> impacts my business operations could be perceived as improper and
> potentially coercive, as it gives the appearance that the court is
> exerting undue pressure on me to withdraw the complaint.

Looney concluded his email by stating that he "look[ed] forward to your

confirmation that my business can now resume bonding activities, given that

the forfeiture has been paid, as was the initial reason for the restriction."

81.     Looney did not receive any response from the Bozeman Municipal

Court to his email.

82.     Looney sent another email to Westberg on Friday, September 6.  A

true and correct copy of this email is attached as **Exhibit 10**.  In that email, Looney

requested a "status update and confirmation that Bad Boy Bail Bonds and Montana

Pretrial Services LLC can now resume bonding activities as expected."  He also

stated the following:

> I would like to reiterate that the forfeiture payment was made solely
> to comply with the court's initial conditions and should not be
> interpreted as an acknowledgment of responsibility or a withdrawal
> of the ethics complaint I have filed with the Judicial Standards
> Commission. *My ability to write bonds should not be contingent
> upon the outcome of that complaint, which is now in the hands of
> the Commission.* (emphasis added).

**Exhibit 10.**

83.     On the morning of Monday, September 9, Westberg sent an email to

Looney in which she stated that "I forwarded your previous email to the judges and

have not heard anything back." A true and correct copy of this email is attached as

**Exhibit 11**.

84.     Looney responded by sending another email later that day, this time to

the judges themselves with Westberg copied on it.  A true and correct copy of this

email is attached as **Exhibit 12**.  In that email, Looney ask about the status of his

bonding privileges.  He then stated as follows:

> Shortly after my company made the payment, I reached out to Michelle
> Westberg to confirm whether my business could resume bonding
> activities. She informed me that both of you wished to meet with me
> before restoring my bonding privileges. However, on September 4,
> 2024, Ms. Westberg notified me via email that neither of you were
> willing to meet while my Judicial Standards Commission (JSC)
> complaint against Judge Tierney remains pending. *While I respect your
> decision regarding whether to meet, I would like to clarify that the
> reinstatement of my company's bonding privileges should not depend on
> the outcome of such a meeting or whether it occurs at all.* To the best of
> my knowledge, there is no legal basis for denying my company's right to
> resume bonding activities in your court.  (emphasis added).

Looney then described how the judges' actions were devastating his business:

> …[T]he ability to write bonds in Bozeman is crucial to sustaining our
> business. We typically write between $250,000 and $350,000 per month
> in liability. By restricting our ability to operate in Municipal Court, we are
> significantly limited in our capacity to provide services in other courts.
> Additionally, when clients are arrested on new charges or warrants in
> other courts but also have pending charges in Municipal Court, we are
> unable to provide full assistance and are forced to refer them to our
> competitors for their Municipal Court bond. This situation is not only
> harming our business operations but is also impacting our reputation in
> the community.

85.     Looney did not receive any response to his email.

86.     Looney sent another email directly to the judges on Tuesday, September 10, with Westberg copied on it.  A true and correct copy of this email is attached as **Exhibit 13**.  In that email, he again stated that the judges' instructions to the Gallatin County Detention Center to refuse his bonds were "causing significant harm to our business and our reputation in the community" as well as the value of the business that he was losing as a result of the judges' retaliation against him for refusing to withdraw his JSC complaint.  He further stated that "the lack of communication and response from the court is not only affecting my business but is also inconsistent with fair and transparent judicial processes."

87.     Looney did not receive any response to his email.

88.     Looney sent another email directly to the judges on Wednesday, September 11, with Westberg copied on it.  A true and correct copy of this email is attached as **Exhibit 14**.  He repeated his request for a response from the judges and emphasized that the "continued inability to write bonds in your court is having a significant impact on our business and reputation."

89.     Looney did not receive any response to his email.

90.     Looney sent another email directly to the judges on Thursday, September 12, with Westberg copied on it.  A true and correct copy of this email is attached as **Exhibit 15**.  He repeated his request for a response from the judges. He further stated as follows:

This lack of response is deeply concerning, not only from a legal standpoint but also in terms of transparency. I am seeking a clear explanation as to why my company is still being denied the ability to write bonds in your court and the legal basis under which this restriction remains in place. Given the financial and reputational impact this situation has on my business, I would appreciate a prompt response.

91.    On Friday, September 13, Judge Herrington finally responded to Looney.  A true and correct copy of her email to him is attached as **Exhibit 16**. Her email in its entirety stated as follows:

> Mr. Looney,
> _At this time, there is a pending ethics complaint with the Commission on Judicial Standards and you have stated in an email to Ms. Westberg that you have also filed new complaints._ Additionally, you have indicated in several different communications that there is pending litigation against the City of Bozeman and/or the Bozeman Municipal Court. _Until there are decisions by the Commission on Judicial Standards and/or until any litigation is complete, we are unable to discuss any topics concerning Bad Boy Bail Bond and/or Montana Pretrial Services, LLC with you directly._ Ms. Westberg has already communicated this to you.
>
> J. Colleen Herrington, Municipal Court Judge

**Exhibit 16** (emphasis added).

92.    Two hours after receiving Judge Herrington's email, Looney emailed a response to her and copied Judge Tierney and Westberg on it.  A true and correct copy of this email is attached as **Exhibit 17**.  Looney's email in its entirety stated as follows:

Dear Judge Herrington:

I must express my deep concern over the court's continued suspension of my company's bonding privileges. While it is true that I have filed an ethics complaint with the Commission on Judicial Standards [I] will be filing more against you and Judge Tierney, I want to make it unequivocally clear: there is no pending litigation against the City of Bozeman or the Bozeman Municipal Court. Any suggestion otherwise is either a misunderstanding or a mischaracterization of my prior communications.

Filing a FOIA request or submitting an ethics complaint does not in any way amount to active litigation, nor does it provide legal grounds to suspend my bonding privileges and severely impact my business. I again respectfully request that you *immediately* reverse your instruction to the detention center and inform [them] that they may again accept my company's bail bonds.

Sincerely,

John J. Looney Sr.

93.     Looney has not received any response from the Bozeman Municipal Court to his email.

**D.   Injuries Looney's Business is Suffering Because of the Judges' Ongoing Retaliation Against Him**

94.     As he explained in his emails to the judges, Looney's business typically wrote bail bonds valuing between $250,000 and $350,000 per month for Bozeman Municipal Court cases prior to the judges instructing the Gallatin County Detention Center not to accept his bonds.  This constituted roughly 50% of his business throughout Montana.

95.     Defendants' ongoing retaliation against Looney has resulted in an 85% reduction of his Bozeman business.

96.     He is struggling to cover operational expenses, including payroll, insurance, and the maintenance of pretrial services programs.

97.     Absent a resumption of his Bozeman business, Looney will soon be forced to lay off staff. This includes both office staff and bondsmen who rely on Bozeman cases to maintain their earnings.

98.     Not being able to operate in such a key jurisdiction has forced Looney to refer clients to competitors, harming not only his business's revenues but also its reputation. Bad Boy Bail Bonds has already had numerous clients turn to its competitors, which compounds the financial losses and further harms its brand.

## CAUSES OF ACTION

## COUNT I

**PROSPECTIVE DECLARATORY RELIEF FOR CONTINUING VIOLATION OF PLAINTIFFS' FIRST AMENDMENT RIGHT OF FREE SPEECH AND PETITIONING FOR REDRESS OF GRIEVENCES (42 U.S.C. § 1983)**

99.     Plaintiffs reallege all matters set forth in the preceding paragraphs.

100.   Under 42 U.S.C. § 1983, any person acting under color of state law who violates a plaintiff's federal constitutional rights "shall be liable to the party

injured in an action at law, suit in equity, or other proper proceeding for

redress….”

101.   In 1996, Congress amended 42 U.S.C. § 1983 by adding the following

provision: “….in any action brought against a judicial officer for an act or

omission taken in such officer’s judicial capacity, injunctive relief shall not be

granted unless a declaratory decree was violated or declaratory relief was

unavailable.”

102.   As the Ninth Circuit has noted, “most courts hold that the [1996]

amendment to § 1983 does not bar declaratory relief against judges.” *Lund v.

Cowan*, 5 F.4th 964, 970 n.2 (9th Cir. 2021), quoting *Justice Network, Inc., v.

Craighead County*, 931 F.3d 753, 763 (8th Cir. 2019).

103.   As a general matter, “the First Amendment prohibits government

officials from subjecting an individual to retaliatory actions” for engaging in

protected speech. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019).

104.   A cause of action for retaliation for protected speech involves three

elements:

     (1) The plaintiff engaged in constitutionally protected activity;

     (2) The defendant’s actions would “chill a person of ordinary
          firmness” from continuing to engage in the protected activity; and

     (3) The protected activity was a substantial motivating factor in the
          defendant’s conduct.

*Arizona Students' Association v. Arizona Board of Regents*, 824 F.3d 858, 867 (9th Cir. 2016).

105.   Freedom of speech includes "the right of the people to petition the Government for a redress of grievances," a right that is "cut from the same cloth as the other guarantees of [the First] Amendment." *McDonald v. Smith*, 472 U.S. 479, 482 (1985).  This right is "implicit in "[t]he very idea of government, republican in form." *Id.*

106.   When he filed his JSC complaint against Judge Tierney in July 2024, Looney was petitioning the government for a redress of grievances and thereby engaging in protected speech.

107.   The Municipal Court judges have prohibited, and are continuing to prohibit, Looney from writing bail bonds in their court until he withdraws his JSC complaints, causing devasting financial injuries.

108.   Such injuries would chill a person of ordinary firmness from engaging in protected speech.

109.   Looney's efforts to seek redress from the JSC were, and are, a substantial motivating factor in Defendants' instructions to sheriffs across Montana to refuse to accept Looney's bail bonds.

110.   Defendants have violated, and are continuing to violate, Looney's rights under the First Amendment.

111.    Looney has suffered, and is continuing to suffer, enormous financial losses as a result of Defendants' ongoing unconstitutional actions.

112.    Looney is entitled to prospective declaratory relief affirming his right to issue bail bonds on behalf of defendants facing criminal charges in Bozeman Municipal Court.

## <u>COUNT II</u>

**INJUNCTIVE RELIEF FOR VIOLATION OF PLAINTIFFS' FIRST AMENDMENT RIGHT TO ENGAGE IN FREE SPEECH AND TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVENCES (42 U.S.C. § 1983)**

113.    Plaintiffs reallege all matters set forth in the preceding paragraphs.

114.    Defendants are destroying Looney's business by emailing instructions to sheriffs across Montana to reject surety bail bonds he writes on behalf of defendants facing criminal charges in the Bozeman Municipal Court.

115.    Defendants are destroying Looney's business because he has exercised, and is currently exercising, his First Amendment right to petition the JSC for redress of grievances.

116.    Defendants' transmissions of these emails to sheriffs across Montana were not acts taken in their judicial capacity.  Therefore, Looney's claims for injunctive relief are cognizable under 42 U.S.C. § 1983 and judicial immunity does not apply.

117.   Looney has suffered, and is continuing to suffer, enormous financial losses as a result of Defendants' ongoing unconstitutional actions.  Therefore, he is entitled to injunctive relief.

## COUNT III

### DAMAGES FOR VIOLATION OF PLAINTIFFS' FIRST AMENDMENT RIGHT TO ENGAGE IN FREE SPEECH AND TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVENCES
### (42 U.S.C. § 1983)

118.   Plaintiffs reallege all matters set forth in the preceding paragraphs.

119.   Defendants are destroying Looney's business by emailing instructions to sheriffs across Montana to reject surety bail bonds he writes on behalf of defendants facing criminal charges in the Bozeman Municipal Court.

120.   Defendants are destroying Looney's business because he has exercised, and is currently exercising, his clearly established First Amendment right to petition the JSC for redress of grievances.

121.   Defendants' transmissions of these emails to sheriffs across Montana were not acts taken in their judicial capacity.  Therefore, Looney's claims for damages are cognizable under 42 U.S.C. § 1983 and judicial immunity does not apply.

122.   Looney has suffered, and is continuing to suffer, enormous financial losses as a result of Defendants' unconstitutional actions.  Therefore, he is entitled to damages.

## PRAYER

WHEREFORE, Plaintiffs respectfully request the following relief from this

Court:

A. Entry of judgment against each Defendant for declaratory and injunctive

   relief;

B. An award of nominal, compensatory, and punitive damages against each

   Defendant;

C. An award of reasonable fees and costs;

D. Any other relief this Court deems just and proper.


DATED: September 30, 2024


Respectfully Submitted,


_____
Matthew G. Monforton
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718

Attorney for Plaintiffs

## REQUEST FOR JURY TRIAL

Plaintiffs hereby request a jury trial for all issues so triable.


DATED: September 30, 2024


Respectfully Submitted,


_____
Matthew G. Monforton
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718

Attorney for Plaintiffs

## VERIFICATION BY JOHN J. LOONEY, Sr.

I, John J. Looney, Sr., declare as follows:

    1. I am the Plaintiff in this matter.

    2. I have reviewed the attached Verified Complaint and declare that the facts and allegations contained therein are true, except so far as they are stated to be on information, and that, so far as they are stated to be on information, I believe them to be true.

    I declare under penalty of perjury under the laws of the State of Montana that the statements contained in this Verification are true and correct.

Executed on September 30, 2024, in Helena, Montana.

John J. Looney, Sr.